**MICHELLE BETANCOURT**
California State Bar No. 215035
**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
San Diego, California 92101-5008
Telephone No. (619) 234-8467

Attorneys for Mr. Cesar Fimbres

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

(HONORABLE DANA M. SABRAW)

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CESAR RICARDO FIMBRES (1),<br><br>Defendant. | Criminal No. 08CR0021-DMS<br><br>Date: May 5, 2008<br>Time: 9:00 a.m.<br><br>**DEFENDANT'S SUPPLEMENTAL BRIEFING AS TO:**<br>**1) MOTION TO ADMIT HEARSAY STATEMENTS;**<br>**2) MOTION TO DISMISS INDICTMENT.** |

**I.**

**INTRODUCTION**

On April 30, 2008, the Court ruled on several motions, including the Motion to Dismiss Count One and the Government's Motion In Limine to Admit Co-Conspirator Statements. At the time of the hearing, the government had not provided any of the statements it seeks to introduce as co-conspirator statements. During the hearing, Mr. Fimbres was given a copy of the plea agreement and the addendum to the plea agreement. A transcript of the plea colloquy has been ordered but has not been produced as of the filing of this briefing. Mr. Fimbres requested a hearing outside the presence of the jury for the Court to determine whether the proffered statements were admissible as co-conspirator statements. The Court denied the request but allowed Mr. Fimbres to submit supplemental briefing on the issue.

Mr. Fimbres also submits supplemental briefing on the denial of the Motion to Dismiss Count One. In order for the Government to proceed to trial on a violation of Title 8 U.S.C. § 1327, the Court must first

determine that the alleged conviction is in fact an aggravated felony. As discussed below, as a matter of law, the alleged conviction does not qualify as an aggravated felony; thus the indictment must be dismissed.

Each of these points is addressed below.

**II.**

**THE PROFFERED STATEMENTS ARE INADMISSIBLE AS CO-CONSPIRATOR STATEMENTS**

The Confrontation Clause forbids the use of hearsay against a criminal defendant at trial, if the defendant is not afforded the right to confrontation. See Crawford v. Washington, 124 S. Ct. 1354 (2004). Under Fed. R. Evid. 802, hearsay statements are inadmissible unless one or more hearsay exceptions apply. When a statement involves multiple levels of hearsay, each level must be independently admissible for the statement to come into evidence. Fed. R. Evid. 805. Here, the government seeks to introduce statements allegedly made by Cesar Fimbres-Perez and Miguel Fimbres as co-conspirator statements pursuant to Federal Rule of Evidence 801(d)(2)(E). The Court indicated that based on the plea colloquy, the Court was satisfied that the statements were admissible pursuant to 801(d)(2)(E) despite Mr. Fimbres-Perez objection and request for an evidentiary hearing. Mr. Fimbres-Perez, once again objects to the admission of these statements. If the Court is inclined to stand by its ruling, Mr. Fimbres-Perez would again ask this Court to hold a hearing to make the proper findings required by 801(d)(2)(E).

Before such statements can be admitted, this Court must determine that (1) a conspiracy existed; (2) the defendant and the declarant were members of the conspiracy; and (3) the statement was made during the course of and in furtherance of the conspiracy. Bourjaily v. United States, 483 U.S. 171, 175 (1987). Neither the proffered statements nor the plea colloquy establish any of the three requirements for admission of co-conspirator statements for several reasons. First, the factual basis does not establish that a conspiracy existed. Paragraph 1 and 2 simply establish that Cesar and his brother had conversations about Miguel's immigration status and criminal convictions. The statements themselves are not sufficient to establish a conspiracy. The Court must have independent evidence of a conspiracy, in addition to the statements, before co-conspirator statements can be admitted. United States v. Tamez, 941 F.2d 770, 775 (9th Cir. 1991); United States v. Gordon, 844 F.2d 1397, 1402 (9th Cir. 1988). The government has not put forth any evidence to show that (1) an agreement to accomplish an illegal objective, (2) one or more overt acts in furtherance of the illegal

objective, and (3) the required intent to carry out the substantive offense. United States v. Schmidt, 947 F.2d 362, 367 (9th Cir. 1991).

Second, Olivia Fimbres never makes an affirmative statement that she is part of the conspiracy that would thereby allow her to testify about the proffered statements by either co-conspirator. Bourjaily, 483 U.S. at 175. Olivia Fimbres' only admission is that she as present during conversations that were had by Miguel and Cesar. Family ties or other close associations are not enough to establish a conspiracy or that one is a member of the conspiracy. See United States v. Casteneda, 9 F.3d 761 (9th Cir. 1993). The statements being proffered must demonstrate a "concert of action" between the defendant and the declarant. United States v. Layton, 855 F.2d 1388, 1398 (9th Cir. 1988)(overruled on other grounds).

Additionally, these statements cannot be said to be made in furtherance of the conspiracy. Mere conversations between co-conspirators or mere narrative declarations among co-conspirators cannot be considered "in furtherance" of a conspiracy. See Fed. R. Evid. 801(d)(2)(E); United States v. Yarbrough, 852 F.2d 1522, 1536 (9th Cir. 1988)(Mere conversations between coconspirators, or merely narrative declarations among them, are not made "in furtherance" of the conspiracy). In order for a statement to be admissible, it must "further the common objectives of the conspiracy or set in motion transactions that are an integral part of the conspiracy." Id. In other words, the statements must be made to induce enlistment, further participation, prompt further action, allay fears or keep co-conspirators abreast of an ongoing conspiracy's activities. United States v. Arias-Villanueva, 988 F.2d 1491, 1502 (9th Cir. 1993). The statements that have been proffered do not further the conspiracy to "smuggle" in Miguel. The fact that the alleged discussions had by Miguel and Cesar go establish that Miguel is an aggravated felon (a fact that Cesar does not have to have the personal knowledge of) does not make them an integral part of the conspiracy. The discussions that Olivia overheard are narrations of past events and circumstances and not anything that "prompted further action" on the part of either party. See United States v. Layton, 720 F.2d 548, 556-57 (9th Cir. 1983) (narrations of past events inadmissible while expressions of future intent are admissible).

Here, the Court must be satisfied that there was an agreement by each of the defendant to "smuggle" Miguel Fimbres. The Court must also be satisfied that each defendant was connected to the agreement, before determining whether any of the statements are admissible. Because there is no proof by the government to substantiate a conspiracy or the connection to such conspiracy, Mr. Fimbres-Perez asks the

Court to reconsider its decision to admit co-conspirator statements. In the alternative, Mr. Fimbres-Perez asks this Court for a hearing outside the presence of the jury so that it may fully assess whether the statements are admissible.

## III.

## THE COURT MUST DISMISS COUNT ONE BECAUSE VOLUNTARY MANSLAUGHTER IS NOT AN AGGRAVATED FELONY

### A. Introduction.

Voluntary manslaughter in California is the unlawful killing of a human being with an intent to kill or with conscious disregard for human life, but without malice aforethought. See CALJIC 8.40 (2004 revision). The definition of "conscious disregard" includes an intentional act whose natural consequences are dangerous to life, but the perpetrator acts in disregard of his awareness of the danger. See id. Thus, California manslaughter can be found when there is no intention to inflict harm, but the accused acts recklessly, in disregard of the likelihood of a resulting death.

The Supreme Court and the 9th Circuit have stated that the intentional use of force is a necessary element of a "crime of violence" as defined in 18 U.S.C. § 16. As a result, the California crime defined in Penal Code § 192(a) lacks an essential component to qualify under federal law. The harm resulting from a reckless homicide is no more intentional than the harm resulting from a reckless or negligent drunk driving offense, as in Leocal v. Ashcroft, 543 U.S. 1 (2004), or a reckless assault, as in Fernandez-Ruiz v. Gonzales, 466 F.3d 1121 (9th Cir. Oct. 26, 2006)(en banc).

### B. Under Supreme Court and Ninth Circuit Law, a "Crime of Violence" Requires Intentional Employment of Force.

Controlling law dictates that unless the required elements of an offense include the intentional employment of force, it cannot be a crime of violence under 18 U.S.C. § 16.

***1. Analytical Framework Applying to Crimes of Violence.***

To determine whether a prior conviction meets the definition of a "crime of violence" under § 16, this Court employs the "categorical approach." See Penuliar, 2008 WL 1792649, at *2. Under this approach, courts "look only to the fact of conviction and the statutory definition of the prior offense," not to the underlying facts. Taylor v. United States, 495 U.S. 575, 602 (1990). "If the state statute criminalizes conduct

that is not a crime of violence . . ., then [the] conviction is not a categorical match." United States v. Wenner, 351 F.3d 969, 972 (9th Cir. 2003). Rather, a prior conviction qualifies as a crime of violence "if and only if the full range of conduct' covered by [the criminal statute] falls within the meaning of that term." United States v. Baron-Medina, 187 F.3d 1144, 1146 (9th Cir. 1999); accord Suarez-Perez v. Mukasey, 512 F.3d 1222, 1225 (9th Cir. 2008); United States v. Vidal, 504 F.3d 1072, 1076 (9th Cir. 2007) (en banc). If the state offense is broader than the definition of "crime of violence," then it is unsuitable for enhancement use, because there is no assurance it relates to conduct which Congress intended to punish by enhanced sentences. See Taylor, 495 U.S. at 599-602.

If the offense fails the first-stage categorical test, the courts may continue to a second stage–or modified categorical approach–by examining judicially noticeable documents in the record of the conviction.

> If the statute criminalizes conduct that would not constitute a[ predicate conviction] under federal sentencing law, then the conviction may not be used for sentence enhancement unless the record includes " 'documentation or judicially noticeable facts that clearly establish that the conviction is a predicate conviction for enhancement purposes.' " United States v. Rivera-Sanchez, 247 F.3d 905, 908 (9th Cir.2001) (en banc) (quoting United States v. Casarez-Bravo, 181 F.3d 1074, 1077 (9th Cir.1999)). " '[I]f the statute and the judicially noticeable facts would allow the defendant to be convicted of an offense other than that defined as a qualifying offense by the guidelines, then the conviction does not qualify as a predicate offense.' " Id. (quoting Casarez-Bravo, 181 F.3d at 1077).

United States v. Corona-Sanchez, 291 F.3d 1201, 1203-04 (9th Cir.2002) (en banc), superseded on other grounds by U.S.S.G. § 2L1.2 cmt. n.4 (2002); accord United States v. Narvaez-Gomez, 489 F.3d 970, 977 (9th Cir. 2007).

Although a "theoretical possibility" of overbreadth is insufficient, where a statute "explicitly defines a crime more broadly than the generic definition, no 'legal imagination,' . . . is required to hold that a realistic probability exists that the state will apply its statute to conduct that falls outside the generic definition of the crime." Grisel, 488 F.3d at 850 (quoting Duenas-Alvarez, 127 S. Ct. at 822)); accord Cerezo v. Mukasey, 512 F.3d 1163, 1167 (9th Cir. 2008) ("But where, as here, the state statute plainly and specifically criminalizes conduct outside the contours of the federal definition, we do not engage in judicial prestidigitation by concluding that the statute creates a crime outside the generic definition of a listed crime.") (internal quotation and citation omitted).

Consequently, if an element of the federal enhancing offense is missing from the state crime, the latter is categorically overbroad, and the court will not even proceed to the second stage by examining the record

of conviction. "The modified categorical approach, however, only applies when the particular elements in the crime of conviction are broader than the generic crime. When the crime of conviction is missing an element of the generic crime altogether, we can never find that 'a jury was actually required to find all the elements of' the generic crime. See Li v. Ashcroft, 389 F.3d 892, 899-901 (9th Cir.2004) (Kozinski, J., concurring) (providing examples)." Navarro-Lopez v. Gonzales, 503 F.3d 1063, 1073 (9th Cir. 2007) (en banc); accord Plasencia-Ayala v. Mukasey, 516 F.3d 738, 749 (9th Cir. 2008); United States v. Jennings, 515 F.3d 980, 992 (9th Cir. 2008).

***2. Crimes of Violence Require Intentional Employment of Force.***

The Supreme Court considered the proper definition of crimes of violence for immigration purposes in Leocal. There, the Supreme Court examined whether a driving under the influence conviction was a crime of violence. Chief Justice Rehnquist's opinion for the unanimous court held that accidental or negligent conduct does not suffice. See 543 U.S. at 9. The term "use" in the definition of crime of violence in 18 U.S.C. § 16 "naturally suggests a higher degree of intent than negligent or merely accidental conduct." Id. In other words, " 'use' [of force] requires *active employment*." Id. (emphasis added). For example, Leocal distinguished pushing someone as a "use" of force, whereas unintentionally falling into someone would not be. Id. Because the Florida drunk driving statute in question did not require any particular mental state, let alone active employment of force, it "therefore is not a crime of violence under § 16(a)." Id. at 10. Treating such non-intentional offenses as crimes of violence "would blur the distinction between the 'violent' crimes Congress sought to distinguish for heightened punishment and other crimes." Id. at 11. The same reasoning precludes treating such an offense as a crime of violence under 18 U.S.C. § 16(b). See id.

Subsequently, the Ninth Circuit, in an en-banc decision, applied Leocal's holding to find that a mental state of recklessness was insufficient to qualify as active employment of violence and recognized that Leocal requires the higher *mens rea* of purposeful action. See Fernandez-Ruiz, 466 F.3d at 1132 ("The bedrock principle of Leocal is that to constitute a federal crime of violence an offense must involve the intentional use of force . . . ."). Because Arizona's domestic violence statute "permits conviction when a defendant recklessly but unintentionally causes physical injury to another," Fernandez-Ruiz reasoned that it did not qualify categorically as a "crime of violence." Id. at 1123, 1131. As "crimes of violence must have a volitional

element" to qualify, offenses which can be found without intentional conduct by the perpetrator were deficient under Leocal. Id. at 1129.

Recklessness was not enough, because it included conduct "whereby the actor *does not desire harmful consequence* but nonetheless foresees the possibility and consciously takes the risk." Id. at 1130. In reaching its conclusion, Fernandez-Ruiz adopted the analysis of the Third Circuit, which requires a showing of "the intentional employment of . . . force," not just the "mere occurrence of force" to qualify as a crime of violence. See Fernandez-Ruiz, 466 F.3d at 1128-29 (citing Oyebanji v. Gonzales, 418 F.3d 260 (3d Cir. 2005), and Tran v. Gonzales, 414 F.3d 464 (3d Cir. 2005)). The mere "subjective awareness of possible injury is not the same as the *intentional* use of physical force against the person of another." Id. at 1130. Because "[r]eckless conduct, as generally defined, is not purposeful," it does not meet Leocal's heightened *mens rea* requirement for crimes of violence. Id.

**D. Manslaughter Convictions Under Penal Code Section 192(a) Do Not Require Intentional Use of Force.**

Miguel Fimbres' prior conviction does not fit categorically within the definition of "crime of violence," because California Penal Code § 192(a), as interpreted by controlling state law, covers crimes that do not involve "the intentional employment of . . . force." Fernandez-Ruiz, 466 F.3d at 1128. Section 192(a) is broader than the generic crime of violence definition, because it can be found solely on the basis of a conscious disregard for the lethal consequences of the act. Because no intentional infliction of harm is required, but mere reckless conduct suffices, it does not require the "use" of force in the meaning of 18 U.S.C. § 16.

***1. California Law of Homicide.***

The California law on homicide–and particularly as relates to the status of voluntary manslaughter–has undergone significant clarification recently. In People v. Lasko, the California Supreme Court held that voluntary manslaughter does not require the intent to kill, but can be found on the basis of conscious disregard for human life, if malice aforethought is lacking. See 999 P.2d at 668; see also People v. Blakely, 999 P.2d 675 (Cal. 2000) (holding that imperfect self-defense negates malice for purposes of finding voluntary manslaughter). In doing so, the California Supreme Court sought to correct a canard about voluntary manslaughter that had existed in California jurisprudence for over a century. See 999 P.2d at 679. Based on

a misinterpretation of an 1874 case, decisions had incorrectly come to view the intent to kill as a required element of manslaughter. See id. (quoting the Court of Appeal decision that the notion "had become deeply seated in the case law without thoughtful examination") (internal quotation marks omitted).

Lasko clarified that intent to kill is *not* an element of manslaughter. Murder, in California, is an unlawful killing with malice aforethought. See id. at 668. Express malice is the intent to kill; implied malice is the conscious disregard for life. See id. Manslaughter is an unlawful killing without malice. See id. at 670. However, killings that are done intentionally or with conscious disregard are still only manslaughter, if malice is absent because of the mitigating circumstances of sudden quarrel or heat of passion, which negates the malice. In other words, "[w]hen a killer *intentionally* but unlawfully kills in a sudden quarrel or heat of passion, the killer lacks malice and is guilty only of voluntary manslaughter. We hold here that this is also true of a killer who, acting with conscious disregard for life and knowing that the conduct endangers the life of another, *unintentionally* but unlawfully kills in a sudden quarrel or heat of passion." Id. at 668.

Lasko systematized the California case law on homicide by setting clearer demarcations for the different levels of culpability. Lasko held that "intent to kill" is not an element of manslaughter, precisely because manslaughter can be predicated also on the non-intentional mental state of conscious disregard of danger to human life. However, both types of homicide are manslaughter, when mitigating circumstances vitiates malice. In sum, "Just as an unlawful killing *with* malice is murder regardless of whether there was an intent to kill, an unlawful killing without malice (because of a sudden quarrel or heat of passion) is voluntary manslaughter, regardless of whether there was an intent to kill." Id. at 671.

Lasko is clear: manslaughter in California does not need to be intentional, but can be based on non-intentional conduct that is reckless, that is, with conscious disregard of the threat to human life. The holding of Lasko has been subsequently incorporated into pattern jury instructions in California. Thus, CALJIC 8.40 (2004 revision) states in mandatory language that "Every person who unlawfully kills another human being either with an intent to kill, or with conscious disregard for human life, is guilty of voluntary manslaughter in violation of Penal Code section 192, subdivision (a)." Similarly, CALCRIM 572 (2006) defines manslaughter, when charged separately and not as a lesser offense, as an intentional killing or as one where "the defendant intentionally committed an act that caused the death of another person; the natural and probable

consequences of the act were dangerous to human life; at the time he acted, he knew the act was dangerous to human life; and he deliberately acted with conscious disregard for human life."

Likewise, respected secondary authorities have acknowledged the California Supreme Court's clarification of the elements of manslaughter. Thus, "Voluntary manslaughter is judicially defined as an unlawful killing that is committed without malice but with conscious disregard for life," specifying that an intent to kill is not an element of manslaughter. 1 Bernard Witkin & Norman Epstein, Cal. Criminal Law 3d § 208 (2000) (citing Lasko). In this context, Witkin notes that prior case law stating the intent to kill is necessary to find manslaughter is overruled. See id. (Supp. 2007). Witkin further confirms that CALJIC 8.40 was revised to conform to Lasko and Blakeley. See id.

Finally, California appellate decisions subsequent to Lasko have applied the clarified definition to manslaughter in homicide prosecutions. See, e.g., People v. Quitquit, 65 Cal. Rptr.3d 674, 683 (Ct. App. 2007) (approving prosecutor argument, because it stressed facts going to conscious disregard of the danger to victim's life as an element of the lesser offense of manslaughter); People v. Martinez, 64 Cal. Rptr.3d 580, 597-98 (Ct. App. 2007) (noting that intent to kill is not element of manslaughter, but, citing Lasko, conscious disregard for life suffices).

Contemporary California law consistently confirms that intent to kill is not a necessary element of manslaughter, which can be committed recklessly by a conscious disregard for life. It should be noted, moreover, that the language "conscious disregard" is merely an expanded phrase that describes the traditional mental state constituting recklessness. Thus, Lasko, in describing the consistency between its formulation and the common law mental state for manslaughter, quotes secondary authorities which describe the "conscious disregard" standard as a form of recklessness. See 999 P.2d at 672. Lasko then goes on to cite this Court's decision in United States v. Paul, 37 F.3d 496, 499 n.1 (9th Cir. 1994), as embracing the same definition of the required mental state for manslaughter, quoting Paul as stating, " 'While most voluntary manslaughter cases involve intent to kill, it is possible that a defendant who killed **unintentionally but recklessly** with extreme disregard for human life may have acted in the heat of passion with adequate provocation.' " Id. (emphasis added).

Paul comports fully with the subsequent controlling case here, Fernandez-Ruiz, which stated that recklessness involves a conscious disregard of the potential harm. See 466 F.3d at 1130 (finding Arizona

definition of recklessness as "consciously disregard[ing] a substantial and unjustifiable risk that the result will occur" brought Arizona domestic violence offense within Leocal's limitation against unintentional crimes of violence). In rejecting the dissent's argument that recklessness critically differs from Leocal's negligence limitation, Fernandez-Ruiz expressly held that the two mental states differ only as to the awareness of the potential risks involved, but that both are unintentional under Leocal. See id. ("But this subjective awareness of possible injury is not the same as the *intentional* use of physical force against the person of another. Neither gross negligence in failing to perceive, nor conscious disregard of a substantial and unjustifiable risk of injury implies that physical force is instrumental to carrying out the crime, such as the plain meaning of the word 'use' denotes."). Likewise, Fernandez-Ruiz approved of Third Circuit decisions where the definition of "recklessness" was also couched in the "conscious disregard" formulation. See id. at 1129; see also Penuliar, 2008 WL 1792649, at *4 (" 'Thus, recklessness requires conscious disregard of a risk of harm that the defendant is aware of . . . .' ") (quoting United States v. Trinidad-Aquino, 259 F.3d 1140, 1146 (9th Cir. 2001)). Although Fernandez-Ruiz rejected the holding in Trinidad-Aquino that recklessness was sufficiently intentional to qualify an offense as a crime of violence, it did not take issue with that case's definition of recklessness, and actually approved of comparable Third Circuit formulations. See 466 F.3d at 1128-29, 1132.[1]

***2. The Full Range of Conduct Covered by Section 192(a) Exceeds the Scope of a Crime of Violence Under Leocal and Fernandez-Ruiz.***

The contemporary definition of California manslaughter includes both intentional and non-intentional (reckless) killings. This is in contradiction to the holding in Fernandez-Ruiz, that recklessness does not suffice as the basis to show a crime of violence under 18 U.S.C. § 16, as interpreted by Leocal. The "conscious disregard" formulation is recognized in general, California, and Ninth Circuit law as just a variant formulation of the same reckless mental state which Fernandez-Ruiz found insufficient. Accordingly, the "full range of conduct" covered under the California manslaughter statute does not fall within the scope of the crime of violence rubric; it therefore cannot be considered an aggravated felony serving as the basis for the

[1] The definitions of "conscious disregard" in California jury instructions likewise describe the mental state as an intentional act with, and despite, an awareness of the potential harm, which coincides with the general criminal law understanding of "recklessness." Cf. CALJIC 8.40 and CALCRIM 572 with 1 Wayne R. La Fave, Substantive Criminal Law § 5.4(f) (2d ed. 2003).

alleged aggravated felony that Miguel Fimbres' is alleged to have suffered. See Vidal, 504 F.3d at 1076.

***3. The Modified Categorical Approach Does Not Apply Here.***

California manslaughter does not require that the killing be intentional, but can be found when the act is merely reckless. Consequently, it is categorically overbroad. Moreover, no inquiry under the modified categorical approach is appropriate, because manslaughter lacks an essential element of intent required for a crime of violence: intentional use of force. See Navarro-Lopez, 503 F.3d at1073; Plascenia-Ayala, 516 F.3d at 749; Jennings, 515 F.3d at 992. Because the requirement of intent is totally lacking, instead of merely requiring a particular form of intent different from the generic offense, the Navarro-Lopez rule applies, and no modified categorical analysis should be conducted. See United States v. Aguila-Montes, No. 05-50170, 2008 WL 1849169, at *4 n.2 (9th Cir. Apr. 28, 2008).

Thus, Miguel Fimbres' conviction for California manslaughter does not qualify as an aggravated felony and the indictment must be dismissed.

## IV.

## CONCLUSION

Based on the stated reasons, the Court should deny the government's motion to introduce hearsay statements as coconspirator statements and grant the defense's request to dismiss the indictment.

Respectfully submitted,

*/s/ Michelle Betancourt*

Date: May 2, 2008

**MICHELLE BETANCOURT**
Federal Defenders of San Diego, Inc.
Attorneys for Mr. Cesar Fimbres